## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| WRI PALOMINO TRACE<br>INVESTORS, L.P.,<br>a Washington limited partnership,<br><br>Plaintiff,<br><br>v.<br><br>PALOMINO TRACE, LLC, an Illinois<br>limited liability company;<br>GV DEVELOPMENT, LTD., an Illinois<br>corporation, LARGO PARTNERS II, LLC,<br>an Illinois limited liability company<br>GEORGE VENTURELLA and<br>TERRI VENTURELLA, Individuals,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. | 

FILED: JULY 23, 2008
08CV4180
JUDGE HOLDERMAN
MAGISTRATE JUDGE DENLOW
TG

### COMPLAINT

Plaintiff, WRI Palomino Trace Investors, L.P. ("WRI"), by its attorneys and for its complaint against Defendants, Palomino Trace, LLC (the "Company"), GV Development, Ltd., ("GVD"), Largo Partners II, LLC, ("Largo"), George Venturella ("George") and Terri Venturella ("Terri", and together with George, the "Venturellas"), states as follows:

### Parties

1.     WRI is a limited partnership organized under the laws of the State of Washington. The partners of WRI are WRI Investments III, LLC ("WRI Investments"), Goldline Creek, LLC ("Goldline") and Hexagon Investments, LLC ("Hexagon").

2.     WRI Investments is a Washington limited liability company with its principal place of business in Seattle, Washington. The members of WRI Investments

are Weyerhaeuser Realty Investors, Inc. ("Weyerhaeuser"), MIG Corporation ("MIG"), and Salchuck Real Estate Investors, Inc. ("Salchuck"). Weyerhaeuser, MIG and Salchuck are each corporations organized under the laws of the State of Washington with their principal place of business in Washington.

3.      Goldline is a limited liability company organized under the laws of the state of Colorado, with its principal place of business in Denver, Colorado. The members of Goldline are three individuals who are each citizens of the State of Wisconsin, and three individuals who are each citizens of the State of Colorado.

4.      Hexagon is a limited liability company organized under the laws of the state of Colorado, with its principal place of business in Denver, Colorado. The members of Hexagon are two individuals who are each citizens of the State of Wisconsin and six trusts. The trustees of the aforementioned trusts are Scott J. Reiman ("Reiman") and Michael J. Hipp ("Hipp"). Reiman is an individual who is a citizen of the State of Colorado. Hipp is an individual who is a citizen of the State of Wisconsin.

5.      Defendant Company is a limited liability company organized under the laws of the State of Illinois with its principal place of business in Frankfort, Illinois. Upon information and belief, Defendants GVD and Largo are the sole members of the Company.

6.      Defendant GVD is a corporation organized under the laws of the State of Illinois, with its principal place of business in Frankfort, Illinois. GVD is a member and, upon information and belief, the manager of the Company.

7.      Defendant Largo is a limited liability company organized under the laws of the State of Illinois and, upon information and belief, its principal place of business is

in Frankfort, Illinois.  Largo is a member of the Company.  Upon information and belief, George Venturella is the sole member/manager of Largo.

8.      Defendants George and Terri Venturella are husband and wife and are each citizens of the State of Illinois and reside in Cook County, Illinois.  The Venturellas are guarantors of the obligations of GVD and the Company to WRI.

## Jurisdiction And Venue

9.      This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1), because Plaintiff, each of its members, and each member of its members are citizens of different states from that of the Defendants (Illinois) and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

10.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a), because (i) all defendants reside in the State of Illinois and at least one Defendant resides in this judicial district; and (ii) a substantial part of the property that is the subject of this action is situated in this district.

## Background

11.      On March 10, 2006, WRI, as member, and GVD as member and manager, entered into an Operating Agreement ("Operating Agreement") whereby the Company, an Illinois limited liability company, was formed.  The purpose and business of the Company was to acquire and develop certain real property located in the Village of Frankfort, Illinois (the "Palomino Trace Project").  The Company was to acquire the real property and develop it into a total of 117 lots, together with common areas and other facilities, including improvements, and then sell the lots to GV Designer Homes, Ltd., an affiliate of GVD, or to third-party buyers.

12.     Also on March 10, 2006, in consideration of and as an inducement to WRI to enter into the Operating Agreement, the Venturellas executed a guaranty ("Guaranty") pursuant to which the Venturellas unconditionally guaranteed the due, proper and full performance by GVD of all of GVD's obligations to WRI.

13.     On or about April 18, 2007, GVD, WRI, the Venturellas and Largo entered into an Amendment to operating Agreement and Agreement to Dissolve and Liquidate Company ("Amended Operating Agreement"). Pursuant to the Amended Operating Agreement, (i) Largo was admitted as a member of the Company; and (ii) each of Largo, GVD, and the Venturellas (a) guaranteed the Company's obligations to WRI; and (b) agreed to contribute themselves, or cause GVD or Largo to contribute, capital in an amount sufficient to enable the Company to satisfy its obligations to WRI. The parties agreed that 100% of any further distributions from the Company were to be made to WRI until the WRI Profit Threshold (as defined in the Operating Agreement), had been satisfied. A copy of the Amended Agreement is attached hereto as Exhibit A.

14.     On January 31, 2008, WRI, GVD, Largo and the Venturellas entered into an Agreement For Withdrawal and Liquidation of Membership Interest (the "Withdrawal Agreement"). A true and correct copy of the Withdrawal Agreement is attached hereto as Exhibit B. Pursuant to the terms of the Withdrawal Agreement, WRI agreed to withdraw from the Company and GVD, Largo and the Venturellas (hereinafter referred to collectively as the "GVD Parties") agreed to purchase and redeem WRI's interest. Withdrawal Agreement, ¶ 1.1.

15.    Concurrently with execution of the Withdrawal Agreement, the GVD Parties executed a Promissory Note in favor of WRI in the amount of $1,450,000.00 (the "Note"). A true and correct copy of the Note is attached hereto as Exhibit C.

16.    The payment terms under the Withdrawal Agreement and Note were as follows: (i) upon execution of the Withdrawal Agreement, the GVD Parties were to pay WRI a non-refundable fee in the amount of $50,000 (the "Initial Fee"); (ii) on or before February 15, 2008, the GVD Parties were to pay WRI the amount of $500,000.00 (the "First Payment"); the deadline for the First Payment could be extended to February 29, 2008 upon payment of a non-refundable extension fee in the amount of $50,000.00, plus interest thereon (the "Extension Fee") and (iii) the remaining purchase price of $950,000.00, plus interest thereon (the "Remaining Purchase Price " and together with the First Payment the "Non-Default Purchase Price") was to be paid in quarterly payments, each in the amount of $100,000.00, commencing April 15, 2008 and continuing on or before the 15th day after each calendar quarter thereafter (the "Quarterly Payments"). Withdrawal Agreement, ¶ 2.1, Note, ¶ 4.1.2.

17.    The Withdrawal Agreement and Note also required that the GVD Parties pay WRI a percentage of the proceeds of sale of constructed units in the Palomino Trace Project and in a separate project owned by Abbey Woods Office Park, LLC, an affiliate of GVD and Largo, located upon certain real property located in Frankfort, Illinois (the "Abbey Woods Project"), as follows: (i) upon the closing of the sale of any constructed unit in the Palomino Trace Project, the GVD Parties were required to pay to WRI $35,000.00 per unit, regardless of the extent of available proceeds of sale, and upon the sale of any unit which is not constructed, whether an individual lot sale/refinance or bulk

sale/refinance, the GVD Parties were required to pay WRI 100% of the net proceeds of such sale or refinance (collectively, the "Palomino Payments") (Withdrawal Agreement, ¶ 2.3; Note ¶ 4.1.3); and (ii) upon the closing of the sale or refinance of all or any portion of the Abbey Woods Project, the GVD Parties were required to pay to WRI 75% of the net proceeds from such sale or refinance (the "Abbey Woods Payments"). Withdrawal Agreement, ¶ 2.3; Note, ¶ 4.1.4.

18.    Both the Withdrawal Agreement and Note provide that upon default, including, without limitation, failure of the GVD Parties to pay any amounts due thereunder, (i) the GVD Parties are required to immediately pay to WRI an amount sufficient for the WRI Profit Threshold (as defined in the Operating Agreement) to be satisfied as of the date such payment is made to WRI; and (ii) the WRI Profit Threshold shall constitute the "Purchase Price" in place of the Non-Default Purchase Price. Withdrawal Agreement, ¶ 2.2; Note, ¶ 2.2.

19.    As security for the obligations of the GVD Parties under the Withdrawal Agreement and Note, GVD, Largo and the Venturellas executed a Security Agreement whereby GVD and Largo assigned to WRI a continuing security interest in all of their interests in the Palomino Trace Project (the "Palomino Trace Security Agreement"), including all rights to receive distributions, fees or other compensation from or in connection with the Company, all cash accounts and other property owned by the Company, and all proceeds of the foregoing. A true and correct copy of the Palomino Trace Security Agreement is attached hereto as Exhibit D.

20.    As further security for the obligations of the GVD Parties under the Withdrawal Agreement and Note, George Venturella executed a Security Agreement (the

"Abbey Woods Security Agreement") whereby George Venturella assigned to WRI a continuing security interest in all of his interests in the Abbey Woods Project, including his membership and management interest in Abbey Woods, all rights to receive distributions, fees, or other compensation from or in connection with Abbey Woods, and all cash accounts and other property owned by Abbey Woods. A true and correct copy of the Abbey Woods Security Agreement is attached hereto as Exhibit E.

## COUNT I: BREACH OF WITHDRAWAL AGREEMENT AND NOTE
### (Against all Defendants)

21.     WRI re-alleges paragraph 1-20 as paragraph 21 of its Count I.

22.     The GVD Parties paid the Initial Fee in the amount of $50,000 and the Extension Fee, thereby extending the due date for the First Payment until February 29, 2008. However, the GVD Parties failed to make the First Payment and, have also failed to make (i) the Quarterly Payments due on April 15, 2008 and June 15, 2008; and (ii) any Palomino Payments or Abbey Woods Payments.

23.     Upon an Event of Default, the GVD Parties are required to immediately pay to WRI an amount sufficient for the WRI Profit Threshold (as defined in the Operating Agreement) to be satisfied as of the date such payment is made to WRI ("WRI IRR Distribution"). Withdrawal Agreement, ¶ 2.2, Note, ¶¶ 2.2, 7.

24.     Additionally, the Note provides that WRI is entitled to receive a late charge equal to 5% of the amount of any payment not received by the 5th day after the date such payment was due. Note, ¶ 4.2.

25.     Pursuant to paragraph 7 of the Note, upon the failure of the GVD Parties to pay any amount due within fifteen (15) days of the date due, WRI is entitled to

accelerate the total amount due under the Note to be immediately due and payable.  On April 16, 2008, WRI sent written notice to the GVD Parties regarding their defaults under the Withdrawal Agreement and Note ("Default Letter"), and accelerating all amounts due thereunder.  A true and correct copy of the Default Letter is attached hereto as Exhibit F. As of the date hereof, the GVD Parties have not made any payments to WRI other than the Initial Fee and Extension Fee.

26.      The GVD Parties currently owe WRI under the Withdrawal Agreement and the Note the sum of not less than $2,239,501.00 which is equal to the WRI IRR Distribution as of July 10, 2008.

27.      WRI is also entitled to recover its expenses, including costs and attorneys' fees incurred in enforcing or collecting the GVD Parties' obligations under the Withdrawal Agreement and Note.  Withdrawal Agreement, ¶ 9.3; Note, ¶¶ 7, 8; Palomino Trace Security Agreement, ¶ 9.1; Abbey Woods Security Agreement, ¶ 9.1.

28.      Pursuant to paragraph 2.4 of the Withdrawal Agreement, each of the GVD parties unconditionally agreed to contribute, or cause GVD or Largo to contribute, capital in an amount sufficient to enable timely payments to be made to WRI under the WRI Note, and further agreed to be jointly, severally and unconditionally liable, and to pay to WRI, all amounts owed to WRI under the Note, including, following an Event of Default, payment of the WRI IRR Distribution.

29.      GVD and Largo, as the sole members of the Company, have bound the Company to the terms of the Withdrawal Agreement and Note.

WHEREFORE, Plaintiff, WRI Palomino Trace Investors, L.P. prays for judgment in its favor and against Palomino Trace LLC, GV Development, Ltd., Largo Partners II, LLC and George and Terri Venturella, jointly and severally, as follows:

a.      all amounts due under the Note and Withdrawal Agreement, including without limitation, the WRI IRR Distribution as of the payment date, in the amount of not less than $2,239,501.00; including 100% of any further Cash Available for Distribution (as defined in the Operating Agreement), the Abbey Woods Payments and the Palomino Payments, and late fees;

b.      accrued and pre-judgment interest;

c.      reasonable attorneys' fees and costs;

d.      restricting all payments or distributions to the GVD Parties until plaintiff has been paid in full; and

e.      granting such other and further relief as this Court deems appropriate.


WRI PALOMINO TRACE INVESTORS L.P.

By:
One of Its Attorneys

Faye B. Feinstein (ARDC# 6186627)
Lauren N. Nachinson (ARDC# 6290314)
Quarles & Brady LLP
500 West Madison Street
Suite 3700
Chicago, Illinois  60661
Telephone: (312) 715-5000

# EXHIBIT A

## PALOMINO TRACE LLC

## AMENDMENT TO OPERATING AGREEMENT AND
## AGREEMENT TO DISSOLVE AND LIQUIDATE COMPANY

This Amendment to Operating Agreement and Agreement to Dissolve and Liquidate Company (the "Amendment"), dated for reference purposes as of April 18, 2007, is among GV DEVELOPMENT, LTD, an Illinois corporation, as Member and Manager ("GVD" or the "Manager"), LARGO PARTNERS II, LLC, an Illinois limited liability company that is an affiliate of GVD ("Largo"), as a new Member, WRI PALOMINO TRACE INVESTORS, L.P., a Washington limited partnership, as Member ("WRI"), and GEORGE VENTURELLA and TERRI VENTURELLA, husband and wife (collectively, "Guarantor").  GVD, Largo, and Guarantor are referred to collectively herein as the "GVD Parties".

### RECITALS

A.  GVD and WRI, as the "Members", previously entered into that certain Operating Agreement for PALOMINO TRACE LLC (the "Company") dated March 10, 2006 (the "Operating Agreement").  GVD's obligations under the Operating Agreement are guaranteed by that certain Guaranty executed by Guarantor in favor of WRI dated March 10, 2006 (the "Guaranty").  Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Operating Agreement or Guaranty, as applicable.

B.  WRI is only participating in Phase 1 of the Project only, and has not elected to participate in Phase 2 of the Project, and as a result is not to incur any liabilities, expenses, or other costs directly or indirectly associated with Phase 2 of the Project. Under the terms of the Operating Agreement, any indebtedness under Project Loans must be allocated between Phase 1 and Phase 2 in a manner satisfactory to WRI.  The Manager is also prohibited from selling any Phase 2 Property or distributing any proceeds from such sales without the prior written consent of WRI.

C.  Phase II of the Project was sold without WRI's written consent, and  a portion of the proceeds of such sale were distributed to GVD instead of being applied to pay down the Project Loan on Phase I (the "Advance Distribution").

D.  In addition to the foregoing, GVD has assigned a portion of its membership interest in the Company to Largo, and has requested that WRI consent to the admission of Largo as an additional Member in the Company.

E.  The parties have differing opinions regarding the extent to which the Advance Distribution complies with the Operating Agreement. To resolve this issue, to admit Largo as a Member of the Company, and to ensure that WRI receives the full amount of distributions to which it is entitled under the Operating Agreement, the Members desire

to amend the Operating Agreement as described herein, and the parties desire to further agree to the terms and conditions set forth below.

## AMENDMENTS AND AGREEMENTS

NOW, THEREFORE, in consideration of the foregoing, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereby agree and amend the Operating Agreement as follows:

**1.     Conditions of Effectiveness.** This Amendment shall take effect upon satisfaction of the following conditions of effectiveness, which are for the sole benefit of WRI and may be enforced or waived by WRI in its reasonable discretion:

(i)    This Amendment shall have been fully and properly executed by all of the Members and Guarantor;

(ii)   Except for the Advance Distribution (with respect to which the parties disagree over whether and to the extent the same complies with the Operating Agreement), the GVD Parties shall be in full compliance with all of their obligations under the Operating Agreement and Guaranty, respectively.

**2.     Capital Accounts.** The current Capital Account balance of WRI is $1,164,205.36. GVD has received distributions sufficient to return all of its capital in the Company, for both Phase 1 and Phase 2; accordingly, GVD's and Largo's current Capital Account balance is and shall be deemed $0.

**3.     Further Capital Contributions.** GVD and Largo shall be jointly and severally responsible for contributing 100% of any further capital that may be needed by the Company to complete the Project and satisfy its obligations, including but not limited to the obligation to make the Required WRI Distribution described in Section 4, below. Guarantor specifically guarantees and shall cause such contributions of capital to be made by GVD and/or Largo. The GVD Parties further specifically acknowledge and agree that if, as the result of the allocation of losses under the Operating Agreement or for any reason, GVD's or Largo's Capital Account becomes negative, GVD or Largo, as applicable, shall be required to immediately contribute the amount of capital to the Company required to restore its Capital Account balance to $0. Under no circumstances shall WRI have any obligation to contribute any additional capital to the Company. Sections 2.1 and 2.2 are amended accordingly. If for any reason such required capital contributions are not timely made by GVD or Largo, as applicable, the GVD Parties jointly and severally agree to pay WRI directly an amount equal to the outstanding unpaid Required WRI Distribution.

**4.  Further Distributions; Guaranty of Distributions to Achieve WRI Profit Threshold; Security.**

**4.1** 100% of any further distributions from the Company, whether in the normal course or in liquidation, shall be made to WRI until the WRI Profit Threshold has been satisfied. Thereafter, any further distributions will be distributed 100% to GVD and/or Largo, as they may mutually determine. In addition, <u>each of the GVD Parties absolutely and unconditionally agrees and guarantees that the Company shall make distributions in an amount sufficient for the WRI Profit Threshold to be satisfied on or before June 1, 2007 (the "Required WRI Distribution"). If the Company has not sold the remainder of the Phase 1 Property by such date as required under Section 5, below, or if for any other reason the Company does not have sufficient Cash Available for Distribution to timely make the Required WRI Distribution, each of the GVD Parties agrees that it shall contribute, or cause GVD or Largo to contribute, as applicable, capital in an amount sufficient to enable such distribution to be timely made.</u> Articles 10 and 11 of the Operating Agreement are amended to be consistent with this Section 4.

4.2 As security for performance of the GVD Parties' obligations herein, including but not limited to the obligation to pay the Required WRI Distribution by June 1, 2007, the GVD Parties shall, no later than April 25, 2007 (i) grant, or cause Largo to grant, as applicable, to WRI a subordinate mortgage on approximately 135 acres of property at the corner of Dralle and Center Roads, Will County, Illinois, that is planned for development into approximately 100 single family units and 30 multi-family units (the "Mortgage"), and (2) make or cause the members of Largo to make a security assignment of the entire membership interest in Largo (the "Security Assignment"); provided, however, that the documents governing such mortgage and security assignment shall explicitly provide that the maximum cumulative amount that WRI may recover from realization or foreclosure of either or both such liens shall be $600,000. The parties agree that the Mortgage and Security Assignment shall each be in a commercially reasonable form that is generally consistent with similar documents used by commercial real estate lenders to secure loans, and that is otherwise mutually acceptable to WRI and the parties thereto in their reasonable discretion. The grant of the Mortgage shall also be contingent upon obtaining any required consents from the first-position lender for the Largo Project, and shall be subject to any limitations or subordination terms such lender may impose as a condition of granting such consent. The GVD Parties agree, however, to use their best, good faith efforts (A) to timely obtain such consent without any such conditions being imposed, and, if certain such conditions are nevertheless required by such lender despite such good faith effort, (B) to ensure that such conditions are acceptable to WRI.

**5.  Sale of Remainder of Phase 1 Property; Dissolution and Liquidation.**  The GVD Parties shall cause the remainder of the Phase 1 Property (which is all of the Property that remains in the Project, since Phase 2 has been sold out) to be promptly sold by the Company to GVDH or one or more third parties in accordance with the requirements of the Operating Agreement, for a price(s) sufficient to provide the Company with sufficient Cash Available for Distribution to make the Required WRI Distribution, and with such sale(s) to close on or before June 1, 2007. Following completion of such sale(s), the Company shall be dissolved and liquidated in accordance with the requirements of Article 11 of the Operating Agreement.

**6. Termination of Overhead Allowance.** The GVD Parties agree that the Manager has already been fully and adequately compensated for all services, materials and facilities previously provided or to be provided to the Company in furtherance of the Project. Accordingly, effective immediately, the Company shall not make any additional overhead and administrative allowance payments to the Manager, and shall not make any other payments of any kind for services rendered or as compensation to Manager or any of its affiliates, shareholders, directors, officers, or employees. Section 4.5 of the Operating Agreement is amended accordingly.

**7. Allocation of Further Profits and Losses.** 100% of all further Net Profits of the Company shall be allocated to WRI until WRI has been allocated Net Profits in a total amount over the entire term of the Company (excluding allocations of Net Profits that have subsequently been offset by allocations of Net Losses) equal to the amount of distributions of Net Profits that must be distributed to WRI in order for WRI to achieve the WRI Profit Threshold. Thereafter, 100% of Net Profits shall be allocated to GVD and Largo, to be divided among them as they see fit. 100% of all further Net Losses of the Company shall be allocated to GVD and Largo, to be divided among them as they see fit. This Section 7 shall supersede and control over Sections 9.2 and 9.3 of the Operating Agreement.

**8. Admission of Largo as a Member.** Largo is hereby admitted as a Member in the Company. Any rights or remedies that WRI has with respect to GVD under the Operating Agreement shall also be enforceable by WRI against Largo, and Largo and GVD shall be jointly and severally responsible for and liable to WRI and/or the Company, as applicable, for all obligations of GVD as a Member and Manager under the Operating Agreement. The Operating Agreement is hereby universally amended to be consistent with this Section.

**9. Reservation of Rights.** The parties specifically reserve any and all rights they may have at law or in equity to enforce the terms and conditions of the Operating Agreement, as amended hereby, including but not limited to commencing one or more actions as a result of the Advance Distribution; provided, however, that WRI agrees that if the GVD Parties fully and timely comply with all of their obligations of this Amendment, including but not limited to the obligation to cause the Company to make the Required WRI Distribution, it will not commence any action against the GV Parties solely as a result of the Advance Distribution.

**10. Reaffirmation of Guaranty.** Guarantor specifically acknowledges and agrees that the Guaranty remains in full force and effect as a Guaranty of all obligations of GVD's obligations under the Operating Agreement, as amended by this Amendment, whether in GVD's capacity as a member or the Manager thereunder. Guarantor further acknowledges and agrees that this Amendment makes Guarantor absolutely, primarily, and jointly and severally obligated to satisfy certain terms hereof, including but not limited to the requirement to cause the Company to timely make the Required WRI Distribution.

**11. *Waiver and Release.*** As of the date of effectiveness of this Amendment, in order to induce WRI to enter into this Amendment, the GVD Parties hereby acknowledge, represent, warrant, and agree to the following:

*11.1* The Recitals set forth above are true and accurate, and the GVD Parties are forever estopped to deny the truth and accuracy of such Recitals.

*11.2* Except insofar as the Advance Distribution may constitute a failure to comply with certain terms of Operating Agreement (and the GVD Parties maintain that it does not), GVD is in full compliance with all of its obligations under the Operating Agreement, as amended hereby.

*11.3* As of the date hereof, WRI is not in violation of any of its obligations under the Operating Agreement, as amended hereby.

*11.4* As of the date hereof, the GVD Parties have no claims against WRI, its predecessors, successors, assigns, or partners, or any of their officers, directors, agents, employees, lawyers, or affiliates (as used in this Section, collectively, the ***"Released Parties"***) for fraud, misrepresentation, misconduct, breach of alleged fiduciary duty, or other tort or wrongdoing, and hereby release and forever discharge the Released Parties from any and all claims, causes of action, rights of offset, and rights to damages which any of the GVD Parties have or may have, or may be entitled to assert, against the Released Parties for any reason whatsoever, whether known or unknown, whether liquidated or contingent, and whether existing or arising by reason of any event or action or by reason of any document occurring or executed prior to the date of this Amendment. However, this release shall not apply to the extent that any representations or warranties made by WRI herein prove to be false or with respect to any claims relating to actions or omissions of WRI first occurring after the effective date of this Agreement. Each of the GVD Parties further warrants and represents that each is the sole and lawful owner of all right, title and interest in and to all of the respective claims released hereby and that it has not heretofore voluntarily, by operation of law or otherwise, assigned or transferred or purported to assign or transfer to any person any such claim or any portion thereof.

**12. *Miscellaneous.* 12.1** This Amendment shall supersede and control over any conflicting terms or conditions of the Operating Agreement. Except as specifically amended hereby, however, all terms and conditions of the Operating Agreement shall remain in full force and effect. *12.2* This Amendment may be executed in any number of counterparts with the same effect as if all parties hereto have signed the same document. All counterparts shall be construed together and shall constitute one Amendment. Facsimile or electronic signatures shall be deemed as effective and binding upon the executing party as an original signature.

*12.3* This Amendment sets forth the entire agreement of the parties and supersedes any and all other prior written or oral agreements between them respecting the subject matter hereof.

     *12.4*    This Amendment shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, personal representatives, successors and assigns.

     *12.5*    This Amendment is to be construed in all respects and enforced according to the substantive laws of the State of Illinois, without regard to conflict of laws principals.

    Executed as of the date first set forth above.

    **GVD:**                GV DEVELOPMENT, LTD.
                             an Illinois corporation

                             By_____
                             George Venturella
                             Its President

    **LARGO:**            LARGO PARTNERS II, LLC
                             an Illinois limited liability company

                             By_____
                             Name:_____
                             Its:_____

    **GUARANTOR:**

                           _____
                           GEORGE VENTURELLA

                           _____
                           TERRI VENTURELLA

**WRI:**                          WRI PALOMINO TRACE INVESTORS, L.P.,
                                  a Washington limited partnership

                                  By WRI Investments III LLC,
                                  a Washington limited liability company
                                  Its General Partner

                          By      Weyerhaeuser Realty Investors, Inc.,
                                  a Washington corporation,
                                  Its Manager

                          By _____
                                  Name _Stve Denensg_,
                                  Its _Vice-President_

                          By _____
                                  Name _____,
                                  Its _____

# EXHIBIT B

# AGREEMENT FOR WITHDRAWAL
# AND LIQUIDATION OF
# MEMBERSHIP INTEREST



PROJECT NAME:  Palomino
ORIGINATING OFFICE:  Chicago
WRI INVESTMENT NO.  04116

This Agreement for Withdrawal and Liquidation of Membership Interest ("Agreement"), dated for reference purposes as of January 31, 2008, is among GV DEVELOPMENT, LTD, an Illinois corporation, as Member and Manager ("GVD" or the "Manager"), LARGO PARTNERS II, LLC, an Illinois limited liability company that is an affiliate of GVD ("Largo"), as Member, WRI PALOMINO TRACE INVESTORS, L.P., a Washington limited partnership, as Member ("WRI"), and GEORGE VENTURELLA and TERRI VENTURELLA, husband and wife (collectively, "Guarantor"). GVD, Largo, and Guarantor are referred to collectively herein as the "GVD Parties".

## RECITALS

A.  GVD and WRI, as the "Members", previously entered into that certain Operating Agreement for PALOMINO TRACE LLC, an Illinois limited liability company (the "Company") dated March 10, 2006 (as amended, the "Operating Agreement"), as amended by that certain Amendment to Operating Agreement and Agreement to Dissolve and Liquidate Company dated April 18, 2007 (the "First Amendment"). GVD's obligations under the Operating Agreement are guaranteed by that certain Guaranty executed by Guarantor in favor of WRI dated March 10, 2006 (the "Guaranty"). Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Operating Agreement or Guaranty, as applicable.

B.  GVD previously assigned a portion of its membership interest in the Company to Largo, an Affiliate of GVD, and Largo was admitted as an additional Member in the Company in accordance with the terms of the First Amendment.  Largo is the owner of that certain project commonly known as Westbury, consisting of approximately 117 acres of real property and certain improvements thereon located at the corner of Dralle and Center Roads, Green Garden, Will County, Illinois, that is planned for development into approximately 106 single family units and 5 acres of commercial development (collectively, the "Largo Project").

C.  A separate Affiliate of GVD and Largo, Abbey Woods Office Park, LLC, an Illinois limited liability company ("Abbey Woods Entity") is the owner of a commercial project located upon certain real property in Frankfort, Illinois (such real property and the improvements located thereon, the "Abbey Woods Project").

D.  The Members of the Company have agreed that the entire Interest of WRI shall be purchased and redeemed, such that WRI shall accomplish a complete exit from the Company, effective as of the date hereof, in accordance with the terms and conditions set forth herein.

**AGREEMENTS**

NOW, THEREFORE, in consideration of the foregoing, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereby agree as follows:

1.      *Purchase and Redemption of WRI's Interest; Withdrawal of WRI as Member.*

1.1      Purchase of WRI's Interest.  In exchange for the covenants and promises set forth herein, including but not limited to payment of the Purchase Price described in Section 2 below, WRI agrees to sell, and the GVD Parties, on behalf of the Company, agree to purchase and redeem WRI's entire Interest in the Company (the "Purchase"), upon satisfaction of the conditions of effectiveness set forth below.  The Purchase shall be effective as of the date of this Agreement (the "Effective Date").

1.2      Withdrawal from LLC.  The GVD Parties hereby accept and agree to WRI's withdrawal.  WRI understands that the Company is not dissolving as a result of WRI's withdrawal, and that the GVD Parties shall continue to operate the Company.

1.3      Termination of WRI's Rights/Obligations.  After the Purchase, WRI shall not have any rights or obligations as a Member in the Company.  Without limiting the generality of the foregoing, WRI shall have no obligation to make further capital contributions, return distributions, or incur losses, nor shall it have any rights to vote or give approvals, receive profits, distributions or other economic participation relating to the Company, other than as set forth herein.  Any funds or other assets of the Company shall henceforth be distributable solely to the GVD Parties, subject to the terms hereof, and WRI shall have no further right or claim therein as a Member, but may have certain rights to claim Company funds in accordance with the terms of this Agreement.  100% of all further Net Profits and Net Losses shall be allocated to GVD and Largo, to be divided among them as they see fit.  No further Net Profits or Net Losses shall be allocated to WRI.

1.4      Books and Records/Taxes.  The Manager shall maintain custody of the books and records of the Company for a period of at least 3 years after the Purchase.  Upon reasonable advance notice, WRI shall have right to inspect and copy the books and records of the Company, to the extent that they have any relevance to WRI's membership in the Company.  WRI retains the right to review and approve the 2007 tax return (the "Tax Return") filed on behalf of the Company and the Members shall reasonably cooperate in approving and filing such tax return.  Provided the Tax Return is prepared using accounting methods and procedures used in the preparation of prior Company tax returns, WRI shall not unreasonably withhold its approval of the Tax Return.  WRI shall, not later than ten business days after receipt of the Tax Return, either approve the Tax Return, or advise the Manager of the specific reasons for its disapproval thereof.

2.     *Payment Terms; WRI Note.* Upon execution hereof, GVD Parties shall pay WRI a fee in the amount of $50,000, which fee is in addition to all other amounts owed under the terms hereof.

2.1     Standard Payments. In addition to the foregoing $50,000 fee, the Company and the GVD Parties, jointly and severally, shall pay WRI the following amounts in exchange for WRI's Interest in the Company:

| Payment Amount | Timing/When Required |
|---|---|
| $500,000 | On or before February 15, 2008* |
| $950,000, plus interest thereon | Per terms of WRI Note |
| Legal fees incurred by WRI | Within 10 days of demand |

* The GVD Parties shall have the option of extending the deadline for this payment to February 29, 2008, upon payment of an additional non-refundable extension fee in the amount of $50,000, which amount is in addition to, and shall not be credited toward, any and all amounts owed hereunder.

The Company and the GVD Parties shall execute a promissory note (the "WRI Note") to confirm their joint and several obligation to make such payments. So long as the amounts set forth in Section 2.1 are paid as and when due, in accordance with the terms of the WRI Note, such amounts, cumulatively, shall constitute the "Purchase Price."

2.2     Default Payments. Upon an Event of Default under the WRI Note, including but not limited to failure to make any payment when due thereunder, the Company and the GVD Parties, jointly and severally, shall be required to immediately pay WRI an amount sufficient for the WRI Profit Threshold (as such term is defined in the Operating Agreement) to be satisfied as of the date such payment is made to WRI (the "Required WRI IRR Payment"), taking into account all cash inflows and outflows associated with WRI's membership with the Company and any payments received by WRI under the WRI Note. Following any such Event of Default, the Required WRI IRR Payment shall constitute the "Purchase Price."

2.3     Timing of Payments. The WRI Note includes requirements for certain installment payments at certain times, as set forth therein. Without limiting the terms of such requirements, and in addition thereto, 100% of any further Cash Available for Distribution (as defined in the Operating Agreement), from bulk sales, or in liquidation (but excluding sales of constructed Units in the Project, which requires a different payment described below in this paragraph), shall be made to WRI until all amounts owed under the WRI Note have been paid in full. As more specifically described in the Note, (i) upon the closing of the sale of any constructed Unit in the Project (as such terms are defined in the Operating Agreement for Palomino Trace LLC), Borrower shall pay Lender $35,000 per Unit, which payment shall be made by Borrower from Borrower's own funds, if necessary, regardless of the extent of available proceeds from the sale of such Unit; and (ii) upon the closing of the sale or refinance for any lot upon which a Unit is not constructed in the Project, Borrower shall pay Lender 100% of the net proceeds from such sale or refinance. No payments or distributions of any nature shall be made to the remaining Members of the Company, or any new members added hereafter, until all amounts owed under the WRI Note have been paid in full.

2.4    Obligation of GVD Parties.  If for any reason the Company does not have sufficient Cash Available for Distribution to timely make the payments required under the WRI Note, each of the GVD Parties agrees that it shall contribute, or cause GVD or Largo to contribute, as applicable, capital in an amount sufficient to enable such payment to be timely made as and when required under the WRI Note.  Each of the GVD Parties jointly, severally, absolutely and unconditionally agrees to pay all amounts owed to WRI under the WRI Note; including, following an Event of Default, payment of the Required WRI IRR Payment to WRI.

3.    Security.  As security for performance of the GVD Parties' obligations herein and under the WRI Note, the GVD Parties shall grant, or cause a grant, to WRI of a security interest in the following, pursuant to and as provided in the Security Assignments bearing even date herewith executed by the Assignors identified in such Security Assignments, in favor or WRI

(i)    all interests of the GVD Parties in the Company, including but not limited to all interests as member or manager, any rights to payments of any nature, and all right to manage and control the Company; and

(ii)    all interests of the GVD Parties and any Affiliates thereof in the Abbey Woods Entity, including but not limited to all interests as member or manager, any rights to payments of any nature, and all right to manage and control the Abbey Woods Entity.

The foregoing security assignments shall be evidenced by one or more separate assignment documents (collectively, the "Security Assignments").  Nothing herein shall be construed to alter or waive any rights of WRI under the Security Assignment relating to the interests of the GVD Parties in Largo executed as part of the First Amendment (the **"Prior Largo Assignment"**), which prior assignment remains in effect hereafter as additional security for the obligations of the GVD Parties hereunder.

4.    Conditions of Effectiveness.  This Agreement shall take effect upon satisfaction of the following conditions of effectiveness, which are for the sole benefit of WRI and may be enforced or waived by WRI in its reasonable discretion:

(i)    This Agreement, the WRI Note, and the Security Assignments shall have been fully and properly executed by all parties thereto and delivered to WRI;

(ii)    GVD Parties, at their expense, shall have provided all necessary information reasonably required by WRI under this Agreement or the Security Assignments, all of which shall be in a form and of substance reasonably satisfactory in all respects to WRI, including but not limited to (a) current title reports for the Project, and the Abbey Woods Project; (b) the Operating Agreement and all other entity documentation for the Abbey Woods Entity; and (c) Phase I environmental reports for the Abbey Woods Project;

(iii)    WRI shall have received approval to the terms of this Agreement and the documents executed in connection herewith from its limited partner, WRI

acknowledging that the GVD Parties shall have no obligations pursuant to this Agreement prior to receipt of the limited partner's approval of this Agreement;

(iv)   WRI shall have received the initial $50,000 payment due by upon execution hereof; and

(v)   GVD Parties shall have either (a) provided evidence satisfactory to WRI that the GVD Parties have caused the termination of the prior UCC financing statement filed on October 9, 2007 in favor of Puritan Finance Corporation, and all rights relating thereto with respect to Puritan Finance Corporation's encumbrance of Guarantor's interest in Largo; or (b) provided WRI with a security interest in alternative collateral of equal or greater value to the intended value of WRI's collateral under the Prior Largo Assignment, as reasonably determined by WRI.

**5.  Obligation to Sell Remainder of Phase 1 Property.** The GVD Parties shall use their best efforts to cause the remainder of the Phase 1 Property (which is all of the Property that remains in the Project, since Phase 2 has been sold out) to be promptly sold or refinanced by the Company for a price(s) sufficient to provide the Company with sufficient Cash Available for Distribution to make the payments required under the WRI Note.

**6.  Termination of Overhead Allowance.** The GVD Parties agree that the Manager has already been fully and adequately compensated for all services, materials and facilities previously provided or to be provided to the Company in furtherance of the Project. Until such time as all amounts owed to WRI under the WRI Note have been paid in full, and in addition to the limit on further payments or distributions of any nature set forth in Section 2.3 above, the Company shall not make any additional overhead and administrative allowance payments to the Manager, any Affiliate of Manager or any third party, and shall not make any other payments of any kind for services rendered or as compensation to Manager or any of its affiliates, shareholders, directors, officers, or employees.

**7.  Reporting Obligations.** The GVD Parties shall continue to provide WRI with the reports required under Section 8.7 of the Operating Agreement, notwithstanding that WRI is no longer a Member of the Company. Additionally, the GVD Parties shall provide similar reports to WRI relating to the Largo Project and the Abbey Woods Project, and shall provide WRI with such materials about the Largo Project and Abbey Woods Project as WRI reasonably requests.

**8.  Waiver and Release.** As of the date of this Agreement, in order to induce WRI to enter into this Agreement, the GVD Parties hereby acknowledge, represent, warrant, and agree to the following:

8.1  As of the date hereof, WRI is not in violation of any of its obligations under the Operating Agreement.

8.2  As of the date hereof, the GVD Parties have no claims against WRI, its predecessors, successors, assigns, or partners, or any of their officers, directors, agents, employees, lawyers, or affiliates (as used in this Section, collectively, the *"Released Parties"*) for

fraud, misrepresentation, misconduct, breach of alleged fiduciary duty, or other tort or wrongdoing, and hereby release and forever discharge the Released Parties from any and all claims, causes of action, rights of offset, and rights to damages which any of the GVD Parties have or may have, or may be entitled to assert, against the Released Parties for any reason whatsoever, whether known or unknown, whether liquidated or contingent, and whether existing or arising by reason of any event or action or by reason of any document occurring or executed prior to the date of this Agreement. However, this release shall not apply to the extent that any representations or warranties made by WRI herein prove to be false or with respect to any claims relating to actions or omissions of WRI first occurring after the effective date of this Agreement. Each of the GVD Parties further warrants and represents that each is the sole and lawful owner of all right, title and interest in and to all of the respective claims released hereby and that it has not heretofore voluntarily, by operation of law or otherwise, assigned or transferred or purported to assign or transfer to any person any such claim or any portion thereof.

8.3 The Company and the GVD Parties shall be exclusively liable for all existing and future liabilities of the Company, including those that are currently unknown but may arise after execution of this Agreement (collectively, "Company Liabilities"). Under no circumstances shall WRI be required to return distributions or incur additional losses as a result of Company Liabilities. The Company and the GVD Parties agree, jointly and severally, to defend, indemnify and hold WRI harmless from and against any losses, expense, or liability arising out of or related to Company Liabilities.

9. *Miscellaneous.*

9.1 This Agreement shall supersede and control over any conflicting terms or conditions of the Operating Agreement.

9.2 Any and all notices required to be given hereunder or under the terms of the documents executed concurrently herewith shall be given in accordance with the terms and requirements of the Operating Agreement. Notice to GVD shall be adequate to provide notice to any or all of the GVD Parties.

9.3 GVD Parties shall reimburse WRI on demand for all legal fees and other expenses incurred in documenting, collecting or enforcing this Agreement, the WRI Note and/or protecting or realizing on any collateral for the amounts owed under the WRI Note (including, without limitation, those incurred with or without suit, in any appeal, bankruptcy, insolvency, or receivership proceeding, and/or any post-judgment collection proceedings).

9.4 This Agreement may be executed in any number of counterparts with the same effect as if all parties hereto have signed the same document. All counterparts shall be construed together and shall constitute one Agreement. Facsimile or electronic signatures shall be deemed as effective and binding upon the executing party as an original signature.

9.5 This Agreement sets forth the entire agreement of the parties and supersedes any and all other prior written or oral agreements between them respecting the subject matter hereof.

9.6     This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, personal representatives, successors and assigns.

9.7     This Agreement is to be construed in all respects and enforced according to the substantive laws of the State of Illinois, without regard to conflict of laws principals.

*[signatures commence on following page]*

Executed as of the date first set forth above.

**GVD:**
    GV DEVELOPMENT, LTD.
    an Illinois corporation

    By _____
    George Venturella
    Its President

**LARGO:**
    LARGO PARTNERS II, LLC
    an Illinois limited liability company

    By _____
    Name: _____
    Its: _____

**GUARANTOR:**
    _____
    GEORGE VENTURELLA

    _____
    TERRI VENTURELLA

**WRI:**
    WRI PALOMINO TRACE INVESTORS, L.P.,
    a Washington limited partnership

    By WRI Investments III LLC,
    a Washington limited liability company
    Its General Partner

    By  Weyerhaeuser Realty Investors, Inc.,
      a Washington corporation,
      Its Manager

      By _____
      Name _Stee Der 9_
      Its _Vice Presdet_

      By _____
      Name _LYNN M. RICHARDS_
      Its _ASST VICE PRESIDENT_

# EXHIBIT C

# PROMISSORY NOTE

(Withdrawal from LLC)



| | |
|---|---|
| PROJECT NAME: | Palomino |
| WRI LOAN NO: | 04116 |
| ORIGINATING OFFICE: | Chicago |

$1,450,000, plus interest and legal fees                              January 31, 2008

NOTICE TO BORROWER: THIS DOCUMENT CONTAINS PROVISIONS FOR A VARIABLE INTEREST RATE.

For value received, the undersigned, PALOMINO TRACE LLC, an Illinois limited liability company, GV DEVELOPMENT, LTD, an Illinois corporation, LARGO PARTNERS II, LLC, an Illinois limited liability company, and GEORGE VENTURELLA and TERRI VENTURELLA, husband and wife (jointly and severally, *"Borrower"*), promise to pay to the order of , WRI PALOMINO TRACE INVESTORS, L.P., a Washington limited partnership (*"Lender"*), at 1301 5th Avenue, Suite 3100, Seattle, WA 98101-2647, or such other place as Lender may from time to time designate in writing, the sum of One Million Four Hundred Fifty Thousand Dollars ($1,450,000), in lawful money of the United States of America, together with certain legal fee amounts owed to Lender and interest on the unpaid principal balance from time to time outstanding hereunder from the date of this Note until paid at the rates set forth below.

1. **Loan Documents.** This Note evidences a loan (the *"Loan"*) from Lender to Borrower for amounts owed from Borrower to Lender under that certain Agreement for Withdrawal and Liquidation of Membership Interest executed by Borrower and Lender concurrently herewith (the *"Withdrawal Agreement"*). The terms (including meanings given to defined terms) and conditions of the Withdrawal Agreement are hereby adopted and incorporated herein. In addition, this Note is secured by those certain Assignment of Membership Interests (collectively, the *"Assignment"*) executed concurrently herewith by Borrower and/or certain Affiliates of Borrower, creating a lien on the personal property described therein and defined as the "Collateral" (this Note, the Withdrawal Agreement and the Assignment, collectively, the *"Loan Documents"*). Borrower hereby agrees to perform and comply with all of the agreements, terms, and conditions of all of the Loan Documents.

2. **Interest Rate.**

    2.1 **Standard Interest.** The outstanding principal balance of the Loan, any reimbursable collection costs, attorneys' fees, advances to protect security, or other advances made by Lender, and any other amounts then due under the Loan will accrue interest at an annual rate (as applicable, the *"Note Rate"*) equal to:

    (a) 10% per annum from the date hereof until and including June 10, 2008;

    (b) 15% per annum from June 11, 2008 until and including September 10, 2008;

    (c) 18% per annum from September 11, 2008 until and including December 10, 2008; or

(b) 21% per annum from December 11, 2008 until and including June 10, 2009;

provided that following an Event of Default (defined below), the foregoing interest rates shall have no effect and the rate payable to Lender shall be governed by Section 2.2. below.

**2.2  Default.** Upon an Event of Default, including but not limited to failure to make any payment when due hereunder, Borrower shall be required to immediately pay Lender an amount sufficient for the WRI Profit Threshold (as such term is defined in the Operating Agreement for Palomino Trace LLC) to be satisfied as of the date such payment is made to Lender (the ***"Required WRI IRR Distribution"***), taking into account all cash inflows and outflows associated with Lender's prior membership with the Palomino Trace LLC and any payments received by Lender under this Note.

**2.3  Calculation of Interest.** All interest shall be calculated by applying the applicable interest rate over a year of 360 days, times the amount on which the interest is to accrue, times the actual number of days that amount is outstanding (including the first day but excluding the last day).

**3.  Loan Term.** The Loan will become due and payable in full on June 10, 2009, unless Lender accelerates the Loan after an Event of Default, in which case the Loan shall mature on the date of acceleration (the applicable date being referred to herein as the ***"Maturity Date"***). On the Maturity Date, Borrower must pay all outstanding principal, accrued interest, and any other fees or charges owed to Lender or expenses for which it is entitled to receive reimbursement. Borrower's failure to pay all such items on or before the scheduled Maturity Date set forth above shall entitle Lender to declare an Event of Default hereunder, which entitles Lender to the Required WRI IRR Payment in accordance with Section 2.2 above, without the need for any notice of default by Lender and without any further cure period.

**4.  Payment.**

**4.1  Required Payments.** Upon execution hereof, Borrower shall pay Lender a fee in the amount of $50,000, which fee is in addition to all other amounts owed under the terms hereof. In addition to the foregoing $50,000 fee, Borrower shall be required to make the following payments to Lender, each of which are cumulative payment requirements (i.e., none of the following required payments are to be credited toward the obligation to make any of the other required payments; for example, the payments required under Section 4.1.3 are not credited toward the payments required under 4.1.2, but rather each is an independent payment obligation):

**4.1.1  *Initial Payment.*** On or prior to February 15, 2008, Borrower shall pay $500,000 to Lender; provided that the Borrower shall have the option of extending the deadline for this payment to February 29, 2008, upon payment of an additional non-refundable extension fee in the amount of $50,000, which amount is in addition to, and shall not be credited toward, any and all amounts owed hereunder.

**4.1.2  *Quarterly Payments.*** Commencing April 15, 2008, and on or before the 15th day after each calendar quarter thereafter (April 15, July 15, October 15, January 15), Borrower shall pay $100,000 to Lender.

**4.1.3  *Palomino Payments.*** (i) Upon the closing of the sale of any constructed Unit in the Project (as such terms are defined in the Operating Agreement for Palomino Trace LLC), Borrower shall pay Lender $35,000 per Unit, which payment shall be made by Borrower from Borrower's

own funds, if necessary, regardless of the extent of available proceeds from the sale of such Unit.  (ii) Upon the closing of the sale or refinance for any lot(s) upon which a Unit is not constructed in the Project (as such terms are defined in the Operating Agreement for Palomino Trace LLC), whether an individual lot sale/refinance or bulk sale/refinance, Borrower shall pay Lender 100% of the net proceeds from such sale or refinance, after payment of any amounts required to reconvey the first-position lien from such Lot and payment of standard and customary closing costs (with any such costs to be paid to Borrower or an Affiliate thereof subject to approval by Lender in its reasonable discretion).  Lender shall have the right to instruct the escrow handling the closing of any such sale or refinance regarding any payment to which Lender is entitled, and Borrower shall provide such escrow information to Lender immediately upon request.  In the event Borrower proceeds with any closing or refinance of a lot or Unit in the Project without payment to Lender of the amounts required hereunder, Lender shall have the right to record a lien or memorandum against the Project to evidence and secure Lender's rights hereunder.

> **4.1.4**   *Abbey Woods Payments.*  Upon the closing of the sale or refinance of all or any portion of the Abbey Woods Project, Borrower shall pay Lender 75% of the net proceeds from such sale or refinance, after payment of any amounts required to reconvey the lien from such portion and payment of standard and customary closing costs (with any such costs to be paid to Borrower or an Affiliate thereof subject to approval by Lender in its reasonable discretion).  Lender shall have the right to instruct the escrow handling the closing of any such sale or refinance regarding any payment to which Lender is entitled, and Borrower shall provide such escrow information to Lender immediately upon request.

> **4.2   Late Charge.**  Lender shall be entitled to receive a late charge equal to 5% of the amount of any payment above not received by the 5th day after the date such payment was due.  Such late charges may be assessed automatically, without the requirement of any prior notice and without waiver of Lender's right to declare an Event of Default, to accelerate the Loan, and/or to pursue any other default remedy under the Loan Documents.  Late charges constitute reasonable compensation to Lender for the additional time and expense of handling and accounting for late payments.

> **4.4   Prepayment.**  Borrower may prepay the Loan in whole or in part at any time without additional premium or penalty of any kind so long as Borrower has paid all interest, paid all fees and reimbursements owing to Lender, and performed all other obligations then due under the Loan.

> **4.5   Application of Payments.**  Payments made to Lender hereunder shall be applied first to outstanding interest and then to principal, unless Lender in its sole discretion elects a different order of application.  Lender shall always have the right to apply payments received first to reimburse Lender for attorneys' fees or collection costs, advances to protect Lender's security, late charges, and/or other fees, charges, or reimbursements owed to Lender under the Loan Documents, before applying such payments to interest and/or principal.

> **5.   Joint and Several Liability.**  The liability hereunder of all individuals and entitles comprising Borrower shall be joint and several.

> **6.   Business Purpose.**  Borrower represents and warrants to Lender that the proceeds of this Note shall be used by Borrower exclusively for commercial and business purposes, and that none of the proceeds of this Note shall be used by Borrower for personal, family, or household purposes.

7. **Default; Acceleration.** If Borrower fails to pay any installment or other amount due hereunder within fifteen (15) days of the date due (with the exception of amounts due on the Maturity Date, for which there will be no grace period), or upon the occurrence of any other default under the Loan Documents that is not cured within thirty (30) days after written notice thereof to Borrower (each an *"Event of Default"*), the Loan may be accelerated and the Required WRI IRR Payment shall become immediately due and payable, at Lender's option and without notice to Borrower, and Lender shall be entitled to pursue any and all rights and remedies available to it under the Loan Documents or under law. Borrower shall reimburse Lender on demand for all legal fees and other expenses incurred in documenting, collecting or enforcing this Loan and/or protecting or realizing on any collateral for the Loan (including, without limitation, those incurred with or without suit, in any appeal, bankruptcy, insolvency, or receivership proceeding, and/or any post-judgment collection proceedings). Failure to accelerate the Loan or any other right Lender may have shall not constitute a waiver of the right to exercise such option or any other right in the event of any subsequent Event of Default.

8. **Costs and Fees of Collection.** Borrower and every other person or entity at any time liable for the payment of the indebtedness evidenced hereby shall also be liable for all costs, expenses, and fees incurred by Lender in collecting any amounts owing hereunder, including reasonable attorney's fees. Any judgment recovered by Lender shall bear interest at 21% per annum.

9. **Waiver of Presentment.** Borrower and every other person or entity at any time liable for the payment of the indebtedness evidenced hereby waive diligence, demand, presentment for payment, notice of protest, and notice of nonpayment of this Note. Every such person or entity further consents to any extension of the time of payment hereof or other modification of the terms of payment of this Note, the release of all or any part of the security for this Note, or the release of any party liable for the payment of the indebtedness evidenced hereby at any time and from time to time for any reason whatsoever. Any such extension or release may be made without notice to any of such persons or entities and without discharging their liability.

10. **No Waiver/Remedies Cumulative.** If Lender delays in exercising or fails to exercise any of its rights under this Note, that delay or failure shall not constitute a waiver of any of Lender's rights, or of any breach, default or failure of condition of or under this Note. No waiver by Lender of any of its rights, or of any such breach, default or failure of condition shall be effective unless the waiver is expressly stated in a writing signed by Lender. All of Lender's remedies in connection with this Note or under applicable law shall be cumulative, and Lender's exercise of any one or more of those remedies shall not constitute an election of remedies.

**11.  Applicable Law.** This Note is made with reference to and is to be construed in accordance with the laws of the State of Illinois, without application of any choice of law principles that would require the application of the law of any other state.

DATED as the day and year first above written.

BORROWER:                    GV DEVELOPMENT, LTD.
                             an Illinois corporation

                             By
                               George Venturella
                               Its President


                             LARGO PARTNERS II, LLC
                             an Illinois limited liability company

                             By
                               Name:
                               Its:



                             GEORGE VENTURELLA



                             TERRI VENTURELLA

# EXHIBIT D

# SECURITY ASSIGNMENT OF MEMBERSHIP INTERESTS



PROJECT NAME:   Palomino
ORIGINATING OFFICE:   Chicago
WRI INVESTMENT NO.   04116

This Security Assignment of Membership Interests (*"Assignment"*) is made this January 31, 2008, by GV DEVELOPMENT, LTD, an Illinois corporation, and by LARGO PARTNERS II, LLC, an Illinois limited liability company (individually and collectively, *"Assignor"*), as assignor, for the benefit of WRI PALOMINO TRACE INVESTORS, L.P., a Washington limited partnership (*"WRI"* or *"Assignee"*), as assignee. Any capitalized terms used but not defined herein shall have the meanings ascribed to them in that certain Agreement for Withdrawal and Liquidation of Membership Interest (the *"Agreement"*) being executed concurrently herewith between Assignors and GEORGE VENTURELLA and TERRI VENTURELLA, husband and wife (collectively, *"Guarantor"*, and, together with Assignor, referred to collectively, jointly, and severally herein as *"Borrower"*), and WRI.

## RECITALS

A.      WRI and Assignors are each members of Palomino Trace LLC, an Illinois limited liability company (the *"Palomino Trace"*), and have agreed to a purchase and redemption of WRI's entire interest in Palomino Trace as described in the Agreement. As part of such purchase, and subject to the terms, conditions, and limitations contained in the Agreement and herein, Borrower has agreed to cause Assignor, as the sole remaining members and manager of Palomino Trace, to execute this Assignment as additional security for the obligations of Borrower under the Agreement (the *"Security Assignment"*).

B.      Assignor will receive substantial benefit from the Agreement. Accordingly, Assignor executes this Assignment to induce WRI to enter into the Agreement, knowing and intending that WRI is relying on this Assignment and its effectiveness as a condition of entering into the Agreement.

## AGREEMENTS

1.      **Security Assignment.**

1.1 As security for the payment and performance of all obligations of Borrower to WRI under the Agreement and the WRI Note executed concurrently herewith, Assignor hereby assigns, pledges, and grants to WRI a continuing security interest in and to all of interests in Palomino Trace, including but not limited to their entire ownership, membership, and management interest in Palomino Trace, all rights to receive distributions, fees, or other compensation from or in connection with Palomino Trace, all cash accounts and other property owned by Palomino Trace, and all proceeds of any of the foregoing (collectively, the *"Collateral"*). The security interest in Palomino Trace granted hereunder is intended in its broadest sense, and includes: (i) any and all direct and indirect interest of Assignor as member and/or

---

manager in Palomino Trace based upon or arising out of the Operating Agreement governing Palomino Trace or under applicable law; (ii) any and all right of Assignor to manage and control Palomino Trace and to perform any of the actions that it is authorized to control as member and/or manager, (iii) any and all right of the Assignor to demand performance of Palomino Trace or other party, arising out of Assignor's interest in Palomino Trace, or to receive a return of any capital contributions or a share of the profits, fees, payments, or other compensation of or from Palomino Trace or any other distributions or economic benefits whatsoever, as a result of operations of Palomino Trace and the property owned by Palomino Trace (the **"Project"**), liquidation thereof, or otherwise, or as a result of distributions or other payments received by Palomino Trace, including but not limited to any distributions resulting from the sale of residential units or lots located in the Project; (iv) any and all rights Assignor may have against Palomino Trace under the Operating Agreement or any contribution agreements, subscription agreements, membership agreements, employment agreements, management agreements, construction agreements, construction supervision or management agreements, or other ancillary agreements with Palomino Trace, including but not limited to any rights to receive any management, administration, or overhead fees in connection with the sale of all or portions of the Project owned or developed by Palomino Trace, and (v) any and all interest Assignor may have in the property and assets of Palomino Trace.

   1.2 Subject to receipt of consent, if needed, from any existing lender (the "Prior Lender(s)") with liens encumbering the Project or the Collateral, Assignor hereby authorizes WRI to file any financing statement or other documents reasonably required by WRI to evidence or further perfect this Assignment.

   1.3 Notwithstanding the foregoing assignment, WRI shall assume no liabilities under the Operating Agreement of Palomino Trace, and Assignor shall remain fully responsible for any and all obligations and liabilities, and shall be obligated to fulfill and perform any and all duties arising thereunder. Furthermore, it is expressly understood that WRI may, at its election, foreclose against or otherwise receive all of the distributions, fees, and other economic benefits associated with the Collateral in or with respect to Palomino Trace, without assuming liability for any of Assignor's obligations under the Operating Agreement or any other agreements relating to Palomino Trace.

  2.  **Financial Information.** Assignor agrees to obtain and to provide WRI with copies of all financial statements and reports of Palomino Trace, including reports relating to member capital contributions and distributions, monthly, quarterly, and annual income and expense reports, annual financial statements, and copies of all records relating to Palomino Trace, including an accounting of any fees payable by Palomino Trace to Assignor.

  3.  **No Modification, Dilution, or Waiver.** Assignor agrees that he will not, without the prior written consent of WRI, not to be unreasonably withheld, and subject to the rights of the Prior Lender(s): (i) modify or amend the Operating Agreement of Palomino Trace or any ancillary agreements governing Palomino Trace in any manner that would adversely affect or have the capability of adversely affecting the timing or amount of fees, distributions, or other economic benefits payable to Assignor or any other rights of the Assignor, (ii) admit any new members or grant any additional membership interest or rights in capital, preferred return, profits, or other economic rights to any new or existing members, (iii) assign all or any portion of its interest or other rights under the Operating Agreement of Palomino Trace, (iv) dissolve,

---

terminate, or otherwise restructure Palomino Trace (except that dissolutions and/or liquidations at the end of a Project conducted in the ordinary course of business shall be permitted), (v) file any bankruptcy or insolvency proceeding against or with respect to Palomino Trace or Assignor, or permit any involuntary filing to exist without dismissal for a period of a period 60 days, or (vi) waive, release, or dilute any right which Assignor has under the Operating Agreement of Palomino Trace. WRI shall not unreasonably withhold its consent to any of the modifications or waivers described in this Section 3 so long as such modifications or waivers do not adversely affect or have the capability of adversely affecting the timing or amount of fees, distributions, or other economic benefits payable to Assignor or any other rights of the Assignor, diminish the value of the Assignor's interest, restrict or limit the powers of Assignor as manager of Palomino Trace or the powers of Assignor as a member or manager, or otherwise diminish WRI's security, as determined in WRI's reasonable discretion.

    4.    **Other Agreements.** This Assignment secures Borrower's performance of all obligations under the Agreement and WRI Note executed concurrently herewith.

    5.    **Warranties.** Assignor represents, warrants and covenants that:

    5.1 Assignor agrees, so long as any obligations remain under the Agreement, not to terminate, rescind, cancel or modify in any material respect the agreements governing Palomino Trace (except that dissolutions and/or liquidations at the end of a Project conducted in the ordinary course of business shall be permitted), nor take any other action restricted by Section 3 hereof without the prior written consent of WRI, which consent shall not be withheld so long as the requirements of Section 3 are satisfied;

    5.2 Assignor owns the Collateral for a business, commercial, or investment purpose, and except as has been disclosed to WRI are free and clear of any other assignments, pledges, liens, encumbrances, or any other security interests (other than any security interests therein that may have been granted to the Prior Lenders), and Assignor has the right and authority to assign and pledge the Collateral to WRI in accordance with the terms herein; and

    5.3 This Assignment constitutes a legal, valid and binding obligation of Assignor, enforceable against Assignor in accordance with its terms, except insofar as enforcement may be limited by bankruptcy, insolvency, reorganization, moratorium or similar laws affecting the enforcement of creditors' rights, and subject to equitable principles;

    5.4 Assignor collectively constitute the sole members and manager of Palomino Trace, Palomino Trace is a limited liability company in good standing under the laws of the State of Illinois, Assignor has full power and authority to execute this Assignment, and doing so does not violate any agreements with any third parties.

The warranties given hereunder shall continue in effect so long as any obligations of Borrower under the Agreement and WRI Note remain unfulfilled.

6.    **Release and Termination of Assignment.**  Upon payment of all amounts owed under the WRI Note to WRI pursuant to the WRI Note and the Agreement, WRI shall surrender all rights in the Collateral, and shall release and Assignor from and terminate this Assignment.

7.    **Rights upon Default.**  Upon the occurrence of an Event of Default, WRI shall, in addition to its rights under this Assignment and WRI Note, have all rights under the Illinois Uniform Commercial Code or other applicable law then or at any time thereafter to foreclose its security interest in the Collateral, or to exercise any other remedy available to WRI under the Agreement, WRI Note, or under applicable law. For this purpose, Assignor agrees that in connection with any UCC foreclosure sale conducted by WRI hereunder, a public or private sale shall be "commercially reasonable" if:  (i) written notice of the time and place of such sale has been provided to Assignor at least 60 days in advance of such sale, (ii) a copy of such notice is published in at least one major newspaper in Chicago, Illinois, at least 60 days in advance of such sale and such notice is published at least one more time in a major newspaper in such cities no later than 30 days prior to the scheduled sale date, and (iii) WRI thereafter has provided to any interested bidders such information about the collateral being foreclosed upon as is in WRI's possession and has been requested by such bidder, and has directed that any requests for further information be directed to Assignor.  Assignor agrees that it shall provide accurate information about Palomino Trace and the Project to interested bidders, including any information that is of public knowledge or publicly available (but Assignor may withhold confidential internal or proprietary information), and that Assignor's failure to provide such information may only discourage bidding or reduce the price that might otherwise be bid in any such foreclosure sale, to Assignor's own detriment.  The foregoing procedures that are specifically agreed to constitute a commercially reasonable sale are not intended to suggest that any other procedure would necessarily not constitute a commercially reasonable sale.  WRI shall not be required to make any warranties with respect to such sale.

8.    **Assignor's Right to Possession and Use of Collateral.**  Until the occurrence of an Event of Default, Assignor shall have possession and the use and ownership of the Collateral, and may use and hold it in any lawful manner not inconsistent with this Assignment.

9.    **Miscellaneous.**

9.1  In the event of any default hereunder, Assignor agrees to pay all of the WRI's reasonable costs of collection and enforcement of performance of any obligation under any of the assigned contracts, including reasonable attorney's fees and out-of-pocket expenses.

9.2  The laws of the State of Illinois shall govern the construction of this Assignment and the rights and obligations of the parties hereto.

9.3  Any action arising out of or relating to this Assignment or the breach thereof shall be brought in the State of Illinois, and the County of Cook or Will.

9.4  No modification, amendment, discharge or change of this Assignment shall be valid unless the same is in writing and signed by the parties hereto.

9.5  Any waiver of any right or remedy by WRI must be in writing in order to be effective, and any purported oral waiver shall be of no effect whatsoever.  No waiver by WRI of any term, condition, or requirement of this Assignment shall constitute a waiver of any other term, condition or requirement hereof, or constitute a waiver of the same term, condition or requirement in any other instance.

9.6  This Assignment shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

9.7  Time is of the essence of this Assignment.

Executed as of the date first set forth above.

**Assignor:**

GV DEVELOPMENT, LTD.
an Illinois corporation

By_____
George Venturella
Its President

LARGO PARTNERS II, LLC
an Illinois limited liability company

By_____
Name:_____
Its:_____

# EXHIBIT E

# SECURITY ASSIGNMENT OF MEMBERSHIP INTERESTS



PROJECT NAME:    Palomino
ORIGINATING OFFICE:    Chicago
WRI INVESTMENT NO.    04116

This Security Assignment of Membership Interests (*"Assignment"*) is made this January 31, 2008, by GEORGE VENTURELLA (individually and collectively, *"Assignor"*), as assignor, for the benefit of WRI PALOMINO TRACE INVESTORS, L.P., a Washington limited partnership (*"WRI"* or *"Assignee"*), as assignee. Any capitalized terms used but not defined herein shall have the meanings ascribed to them in that certain Agreement for Withdrawal and Liquidation of Membership Interest (the *"Agreement"*) being executed concurrently herewith between Assignor and Palomino Trace LLC, Largo Partners II, LLC, an Illinois limited liability company, GV Development, LTD, an Illinois corporation (with Assignor, referred to collectively, jointly, and severally herein as *"Borrower"*), and WRI.

## RECITALS

A.    WRI and Assignors, and/or certain affiliates thereof, are each members of Palomino Trace LLC, an Illinois limited liability company (the *"Palomino Trace"*), and have agreed to a purchase and redemption of WRI's entire interest in Palomino Trace as described in the Agreement. As part of such purchase, and subject to the terms, conditions, and limitations contained in the Agreement and herein, Borrower has agreed to cause Assignor to execute this Assignment as additional security for the obligations of Borrower under the Agreement (the *"Security Assignment"*).

B.    Assignor will receive substantial benefit from the Agreement. Accordingly, Assignor executes this Assignment to induce WRI to enter into the Agreement, knowing and intending that WRI is relying on this Assignment and its effectiveness as a condition of entering into the Agreement.

## AGREEMENTS

1.    **Security Assignment.**

1.1  As security for the payment and performance of all obligations of Borrower to WRI under the Agreement and the WRI Note executed concurrently herewith, Assignor hereby assigns, pledges, and grants to WRI a continuing security interest in and to all of interests in Abbey Woods Office Park, LLC, an Illinois limited liability company (*"Abbey Woods"*), including but not limited to their entire ownership, membership, and management interest in Abbey Woods, all rights to receive distributions, fees, or other compensation from or in connection with Abbey Woods, all cash accounts and other property owned by Abbey Woods, and all proceeds of any of the foregoing (collectively, the *"Collateral"*). The security interest in Abbey Woods granted hereunder is intended in its broadest sense, and includes: (i) any and all direct and indirect interest of Assignor as member and/or manager in Abbey Woods based upon or arising

out of the Operating Agreement governing Abbey Woods or under applicable law; (ii) any and all right of Assignor to manage and control Abbey Woods and to perform any of the actions that it is authorized to control as member and/or manager, (iii) any and all right of the Assignor to demand performance of Abbey Woods or other party, arising out of Assignor's interest in Abbey Woods, or to receive a return of any capital contributions or a share of the profits, fees, payments, or other compensation of or from Abbey Woods or any other distributions or economic benefits whatsoever, as a result of operations of Abbey Woods and the property owned by Abbey Woods (the *"Project"*), liquidation thereof, or otherwise, or as a result of distributions or other payments received by Abbey Woods, including but not limited to any distributions resulting from the sale of residential units or lots located in the Project; (iv) any and all rights Assignor may have against Abbey Woods under the Operating Agreement or any contribution agreements, subscription agreements, membership agreements, employment agreements, management agreements, construction agreements, construction supervision or management agreements, or other ancillary agreements with Abbey Woods, including but not limited to any rights to receive any management, administration, or overhead fees in connection with the sale of all or portions of the Project owned or developed by Abbey Woods, and (v) any and all interest Assignor may have in the property and assets of Abbey Woods.

      1.2  Subject to receipt of consent, if needed, from any existing lender (the "Prior Lender(s)") with liens encumbering the Project or the Collateral, Assignor hereby authorizes WRI to file any financing statement or other documents reasonably required by WRI to evidence or further perfect this Assignment.

      1.3  Notwithstanding the foregoing assignment, WRI shall assume no liabilities under the Operating Agreement of Abbey Woods, and Assignor shall remain fully responsible for any and all obligations and liabilities, and shall be obligated to fulfill and perform any and all duties arising thereunder. Furthermore, it is expressly understood that WRI may, at its election, foreclose against or otherwise receive all of the distributions, fees, and other economic benefits associated with the Collateral in or with respect to Abbey Woods, without assuming liability for any of Assignor's obligations under the Operating Agreement or any other agreements relating to Abbey Woods.

    2.    **Financial Information.**  Assignor agrees to obtain and to provide WRI with copies of all financial statements and reports of Abbey Woods, including reports relating to member capital contributions and distributions, monthly, quarterly, and annual income and expense reports, annual financial statements, and copies of all records relating to Abbey Woods, including an accounting of any fees payable by Abbey Woods to Assignor.

    3.    **No Modification, Dilution, or Waiver.**  Assignor agrees that he will not, without the prior written consent of WRI, not to be unreasonably withheld, and subject to the rights of the Prior Lender(s): (i) modify or amend the Operating Agreement of Abbey Woods or any ancillary agreements governing Abbey Woods in any manner that would adversely affect or have the capability of adversely affecting the timing or amount of fees, distributions, or other economic benefits payable to Assignor or any other rights of the Assignor, (ii) admit any new members or grant any additional membership interest or rights in capital, preferred return, profits, or other economic rights to any new or existing members, (iii) assign all or any portion of its interest or other rights under the Operating Agreement of Abbey Woods, (iv) dissolve,

terminate, or otherwise restructure Abbey Woods (except that dissolutions and/or liquidations at the end of a Project conducted in the ordinary course of business shall be permitted), (v) file any bankruptcy or insolvency proceeding against or with respect to Abbey Woods or Assignor, or permit any involuntary filing to exist without dismissal for a period of at least 60 days, or (vi) waive, release, or dilute any right which Assignor has under the Operating Agreement of Abbey Woods. WRI shall not unreasonably withhold its consent to any of the modifications or waivers described in this Section 3 so long as such modifications or waivers do not adversely affect or have the capability of adversely affecting the timing or amount of fees, distributions, or other economic benefits payable to Assignor or any other rights of the Assignor, diminish the value of the Assignor's interest, restrict or limit the powers of Assignor as manager of Abbey Woods or the powers of Assignor as a member or manager, or otherwise diminish WRI's security, as determined in WRI's reasonable discretion.

4.    **Other Agreements.** This Assignment secures Borrower's performance of all obligations under the Agreement and WRI Note executed concurrently herewith.

5.    **Warranties.** Assignor represents, warrants and covenants that:

5.1  Assignor agrees, so long as any obligations remain under the Agreement, not to terminate, rescind, cancel or modify in any material respect the agreements governing Abbey Woods (except that dissolutions and/or liquidations at the end of a Project conducted in the ordinary course of business shall be permitted), nor take any other action restricted by Section 3 hereof without the prior written consent of WRI, which consent shall not be withheld so long as the requirements of Section 3 are satisfied;

5.2  Assignor owns the Collateral for a business, commercial, or investment purpose, and except as has been disclosed to WRI are free and clear of any other assignments, pledges, liens, encumbrances, or any other security interests (other than any security interests therein that may have been granted to the Prior Lender(s)), and Assignor has the right and authority to assign and pledge the Collateral to WRI in accordance with the terms herein; and

5.3  This Assignment constitutes a legal, valid and binding obligation of Assignor, enforceable against Assignor in accordance with its terms, except insofar as enforcement may be limited by bankruptcy, insolvency, reorganization, moratorium or similar laws affecting the enforcement of creditors' rights, and subject to equitable principles;

5.4  Assignor collectively constitute the sole members and manager of Abbey Woods, Abbey Woods is a limited liability company in good standing under the laws of the State of Illinois, Assignor has full power and authority to execute this Assignment, and doing so does not violate any agreements with any third parties.

The warranties given hereunder shall continue in effect so long as any obligations of Borrower under the Agreement and WRI Note remain unfulfilled.

6.      **Release and Termination of Assignment.**  Upon payment of all amounts owed under the WRI Note to WRI pursuant to the WRI Note and the Agreement, WRI shall surrender all rights in the Collateral, and shall release and Assignor from and terminate this Assignment.

7.      **Rights upon Default.**  Upon the occurrence of an Event of Default, WRI shall, in addition to its rights under this Assignment and WRI Note, have all rights under the Illinois Uniform Commercial Code or other applicable law then or at any time thereafter to foreclose its security interest in the Collateral, or to exercise any other remedy available to WRI under the Agreement, WRI Note, or under applicable law. For this purpose, Assignor agrees that in connection with any UCC foreclosure sale conducted by WRI hereunder, a public or private sale shall be "commercially reasonable" if:  (i) written notice of the time and place of such sale has been provided to Assignor at least 60 days in advance of such sale, (ii) a copy of such notice is published in at least one major newspaper in Chicago, Illinois, at least 60 days in advance of such sale and such notice is published at least one more time in a major newspaper in such cities no later than 30 days prior to the scheduled sale date, and (iii) WRI thereafter has provided to any interested bidders such information about the collateral being foreclosed upon as is in WRI's possession and has been requested by such bidder, and has directed that any requests for further information be directed to Assignor.  Assignor agrees that it shall provide accurate information about Abbey Woods and the Project to interested bidders, including any information that is of public knowledge or publicly available (but Assignor may withhold confidential internal or proprietary information), and that Assignor's failure to provide such information may only discourage bidding or reduce the price that might otherwise be bid in any such foreclosure sale, to Assignor's own detriment.  The foregoing procedures that are specifically agreed to constitute a commercially reasonable sale are not intended to suggest that any other procedure would necessarily not constitute a commercially reasonable sale.  WRI shall not be required to make any warranties with respect to such sale.

8.      **Assignor's Right to Possession and Use of Collateral.**  Until the occurrence of an Event of Default, Assignor shall have possession and the use and ownership of the Collateral, and may use and hold it in any lawful manner not inconsistent with this Assignment.

9.      **Miscellaneous.**

9.1  In the event of any default hereunder, Assignor agrees to pay all of the WRI's reasonable costs of collection and enforcement of performance of any obligation under any of the assigned contracts, including reasonable attorney's fees and out-of-pocket expenses.

9.2  The laws of the State of Illinois shall govern the construction of this Assignment and the rights and obligations of the parties hereto.

9.3  Any action arising out of or relating to this Assignment or the breach thereof shall be brought in the State of Illinois, and the County of Cook or Will.

9.4  No modification, amendment, discharge or change of this Assignment shall be valid unless the same is in writing and signed by the parties hereto.

9.5  Any waiver of any right or remedy by WRI must be in writing in order to be effective, and any purported oral waiver shall be of no effect whatsoever.  No waiver by WRI of any term, condition, or requirement of this Assignment shall constitute a waiver of any other term, condition or requirement hereof, or constitute a waiver of the same term, condition or requirement in any other instance.

9.6  This Assignment shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

9.7  Time is of the essence of this Assignment.

Executed as of the date first set forth above.

Assignor:

GEORGE VENTURELLA

# EXHIBIT F



# HCMP

HILLIS
CLARK
MARTIN &
PETERSON
*law offices*

April 16, 2008

Tom Eisner                                                  *Via Overnight Courier*
Eisner & Heiman, P.C.                                            *and E-Mail*
18400 Maple Creek Drive, Suite 700
Tinley Park, IL 60477

     Re:   *Palomino Trace, LLC*

Dear Tom:

     As you know, this law firm represents WRI Palomino Trace Investors, L.P. ("WRI").

     WRI has received fully executed versions of the Agreement for Withdrawal and Liquidation of Membership Interest (the "Agreement for Withdrawal"), Promissory Note, Security Assignment (Abbey Woods), and Security Assignment (Palomino), copies of which are attached hereto (collectively, the "Buy-Out Documents").

     The GVD Parties, as defined in the Agreement for Withdrawal, have failed to satisfy the condition set forth as Section 4(v) in such Agreement -- the removal of the Puritan lien against Mr. Venturella's interest in Largo Partners II, LLC. Despite the failure of the GVD Parties to satisfy this condition, the language in Section 4 of the Agreement for Withdrawal provides WRI with the right to waive the condition and effectuate the Agreement for Withdrawal and related Buy-Out Documents. WRI is electing to waive, and does hereby waive, the failed condition. Therefore, the attached Buy-Out Documents are binding and enforceable, and now define the current legal arrangement between the respective parties.

     Under the Buy-Out Documents executed by your client, the GVD Parties were required to make a $500,000 payment in February. This payment has not been made. This letter serves as WRI's written notification that the GVD Parties are currently in default under the Buy-Out Documents.

     WRI's preference is for your client to pay the amounts owed under the Buy-Out Documents consistent with the terms thereof. As such, WRI does not intend to take

500 Galland Building
1221 Second Avenue
Seattle, Washington
98101-2925

phone 206.623.1745
fax 206 623 7789
www.hcmp.com

A PROFESSIONAL SERVICE CORPORATION



MERITAS
LAW FIRMS WORLDWIDE

Tom Eisner
April 16, 2008
Page 2 of 3

immediate legal action, but will be carefully evaluating all of its legal options if the outstanding amounts remain unpaid. Notwithstanding the foregoing, nothing in this letter should be construed as a promise to forbear, or a promise to provide notice prior to the commencement of legal proceedings for recovery of amounts owed by your client under the Buy-Out Documents.

WRI's failure to immediately exercise its rights and remedies in connection with the past-due amounts shall not constitute a waiver or release of any rights, claims of default, or causes of action that WRI may now have or that may subsequently arise under the Buy-Out Documents. WRI expressly reserves all legal, contractual and equitable rights and remedies afforded to it under the Buy-Out Documents and applicable law.

Further, WRI's acceptance of any partial payment should not be considered a novation, modification, or renewal of the terms of the Buy-Out Documents, nor shall WRI's acceptance of any payment act as a waiver of any right, remedy, or power available to WRI, should WRI subsequently decide to take such action.

This letter is being transmitted to you as a courtesy, and is not intended as an admission that any written notice is otherwise due to your client. The only agreements that continue to exist between WRI and your client are those set forth in the Buy-Out Documents, which may only be amended by agreement of the parties in writing.

NO ACTION TAKEN OR NOT TAKEN BY WRI TO DATE, NOR ANY FURTHER DELAY BY WRI IN COMMENCING ANY REMEDY, SHALL BE CONSTRUED AS A WAIVER OF OR PROMISE TO FORBEAR FROM EXERCISING ANY AND ALL RIGHTS AND REMEDIES AVAILABLE TO WRI UNDER THE BUY-OUT DOCUMENTS. THE RIGHTS AND OBLIGATIONS OF THE GVD PARTIES AND WRI SHALL BE DETERMINED SOLELY FROM THE BUY-OUT DOCUMENTS, AND ANY PRIOR ORAL OR WRITTEN AGREEMENTS BETWEEN WRI AND THE GVD PARTIES CONCERNING THE SUBJECT MATTER HEREOF AND THE BUY-OUT DOCUMENTS ARE SUPERSEDED BY AND MERGED INTO THE BUY-OUT DOCUMENTS. THE BUY-OUT DOCUMENTS EMBODY THE FINAL ENTIRE AGREEMENT OF THE GVD PARTIES AND WRI RELATING TO THE SUBJECT MATTER HEREOF, AND MAY NOT BE CONTRADICTED OR VARIED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OR DISCUSSIONS OF THE GVD PARTIES AND WRI. THERE ARE NO ORAL AGREEMENTS BETWEEN THE GVD PARTIES AND WRI.

HCMP

Tom Eisner
April 16, 2008
Page 3 of 3

     If you have any questions about the subject matter of this letter, please do not hesitate to give me a call.

Very truly yours,

Gabriel S. Rosenthal

*E-Mail* GSR@hcmp.com
Direct Dial: (206) 470-7655

cc (via email):    Steve Denenberg
               Lorrie Scott
               James Fox

ND:   v0

HCMP